# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| CHRISTIAN D. WOODSON | : |
| Plaintiff, | : |
|  | : CIVIL ACTION |
| v. | : |
|  | : NO. 12-cv-04919 |
| PRIME CARE MEDICAL, INC., *et al*. | : |
| Defendants. | : |

**MEMORANDUM**

YOHN, J.                                                                                                                 January 23, 2013

Plaintiff Christian Woodson, a prisoner currently being held at Lancaster County Prison, brings suit against the following defendants[1]: Prime Care Medical, Inc. ("Prime Care"); Carol Greener, head supervisor of the LCP Prime Care clinic; Dr. Lorie Hosteller; Dr. Turgent; Dr. Sandra Abbey; Leslie Harless, L.P.N.; Lancaster County Prison ("LCP"); Paul Smeal, Warden of LCP; and Deputy Wardens Arnold and Shiffer. In his complaint, Woodson alleges various constitutional violations under 42 U.S.C. § 1983, and appears to allege violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, the Rehabilitation Act ("RA"), 29 U.S.C. §§ 701-796, and defamation of character. Currently before me is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on behalf of defendants LCP, Warden Smeal, and Deputy Wardens Arnold and Shiffer. For the reasons set forth below,

---

[1] The names of the defendants appear in the manner as listed by Woodson. For some of the defendants, he fails to provide a first name. In addition, counsel for the defendants fails to provide the first names of Deputy Wardens Arnold and Shiffer in the motion to dismiss.

defendants' motion to dismiss is granted, and Woodson's claims under the Eighth Amendment, the Fourteenth Amendment Due Process Clause, and his "class of one" Equal Protection Clause claim, all pursuant to § 1983, along with his defamation of character claim, are dismissed with prejudice. Woodson's suspect class Equal Protection Clause claim and possible ADA and RA claims, however, are dismissed without prejudice to his right to file an amended complaint.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Woodson was incarcerated at LCP on June 15, 2012. (Compl. 9.) Sometime between June 15 and June 30, Woodson came under the care of Dr. Lorie Hosteller, a Prime Care physician who works at LCP, for a routine physical. (*Id*. 6.) Following the physical, Woodson claims that Dr. Hosteller cleared him to work in LCP with "no restrictions." (*Id*. 7.)

From July 22 to July 30, 2012, Woodson worked as a prison cleaner, or "C.Q.," at LCP. (*Id*. 5.) On Monday, July 30, Correction Officer Palkowitz, by order from Sergeant Lefever, fired Woodson as a C.Q. (*Id*.) When Woodson asked why he was being removed from his position, he was told it was for medical reasons, and that pursuant to a Prime Care policy Woodson was not allowed to handle food or touch trays. (*Id*.) Woodson claims that he was never shown such a policy, and that if such a policy in fact exists, it has been enforced only against him. (*Id*.)

A corrections officer advised Woodson to write to Carol Greener, the head supervisor of Prime Care, to request further information. (*Id*.) Woodson claims he wrote to Greener on June 30, the same day he was fired, and asked her to provide him with documentation to support his removal from his C.Q. position, along with legal and medical justification for Prime Care's policy. (*Id*. 5-6.) As of August 16, 2012, Greener had not responded to Woodson's letter. (*Id*. 6.)

2

In addition to his letter to Greener, Woodson claims he also submitted grievances to Warden Smeal and Deputy Wardens Arnold and Shiffer, in which he relayed his issues and concerns behind his removal from his C.Q. position. (*Id*.) Arnold responded on August 13, 2012, and provided the following explanation:

> Please understand that you have no right to any gratuitous prison work assignment. In view of your drug (specific) usage, medical has determined that you are not eligible to work in Food Service. There is no evidence substantiating disparate treatment between you and any inmate similarly situated. Your request is denied.

(Pl.'s Ex. A.) Despite this response, Woodson felt the policy was unconstitutional, and thus brought this complaint alleging constitutional violations under 42 U.S.C. § 1983.

In support of his argument that the policy is unconstitutional, Woodson claims that not a single inmate became ill or caught a disease while he worked as a C.Q., nor were any complaints or negative reports filed against him. (Compl. 7.) He also alleges that he is not an "I.V. drug user," but admits to snorting heroin prior to incarceration. (*Id*.) Furthermore, Woodson claims that he does not have any communicable diseases. (*Id*.) He claims that there are numerous inmates who are I.V. drug users or have communicable diseases, but still remain employed as C.Q.s and kitchen assistants. (*Id*.) For these reasons, Woodson alleges that the policy is discriminatory, perhaps even racially so.[2] (*Id*.) As a result of the discriminatory policy, Woodson alleges mental and emotional injuries and defamation of his character.

Woodson also claims that he has been denied medicine for the following diagnosed mood disorders: bipolar disorder, post-traumatic stress disorder, paranoia, depression, anxiety, and

---

[2] I note that Woodson does not state that the policy is racial, so much as he puts forward the possibility that it may be racial. (Compl. 7) ("So fact is: I remain the only inmate fired for this policy which is discrimination in its purest form! It may even be 'racial'?").

insomnia. (*Id*. 8.) He claims that he was prescribed medication by Drs. Turgent and Abbey, both medical personnel with Prime Care at LCP, and that Prime Care refused to provide him with his medication from the start of his incarceration on June 15, 2012.³ (*Id*.) Because of this denial, Woodson claims medical negligence, mental and emotional anguish, pain and suffering, and cruel and unusual punishment. (*Id*. 9) Woodson also "feels and believes" that Smeal and Shiffer are involved in the denial of medicine because "they made no efforts or attempts to eliminate the problem or investigate [his] complaints." (*Id*.)

On August 16, 2012, Woodson filed this complaint. Thereafter, defendants LCP, Smeal, Arnold, and Shiffer moved to dismiss for failure to state a claim under Rule 12(b)(6). Woodson then filed a response, opposing the defendants' motion to dismiss. I now address the defendants' motion.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). The pleading standard of Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere

---

³It is not clear from the complaint when the prescriptions were made as Woodson has been an inmate at LCP more than once, most recently from April 2011–January 2012. (Compl. 9.) The wording of the complaint suggests, however, that the prescriptions were from a previous stay. (*Id*.) ("Prime Care Medical refuses also to provide me my medications (which I was receiving from April 2011 to Jan. 6, 2012) my last incarceration here in LCP.").

4

conclusory statements" will not suffice. *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must contain sufficient factual matter to be plausible on its face. *See id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; a sheer possibility that a defendant acted unlawfully is not sufficient. *Id.*

"[W]hen presented with a *pro se* litigant, [the court has] 'a special obligation to construe his complaint liberally.'" *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) (quoting *United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999)). In reviewing Woodson's complaint, I bear in mind that "a *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers . . . .'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972)). Nevertheless, "in a desire to effect justice by affording an uncounseled plaintiff leeway in pleading his case, a court must be mindful to work with what the complaint reasonably provides; it cannot stretch the obligation of lenience to its breaking point." *Kohler v. Pa.*, 438 F. App'x 120, 124 (3d Cir. 2011) (per curiam).

### III. DISCUSSION

Construing Woodson's complaint liberally, it appears that he alleges several claims against the moving defendants. Under 42 U.S.C. § 1983, Woodson claims that the defendants violated both the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment when he was removed from his position as C.Q. Next, and also under § 1983, he alleges a violation of the "cruel and unusual punishment" provision of the Eighth Amendment in the denial of his medication. As a result of these violations, Woodson alleges that he suffered

5

mental and emotional anguish. Woodson also alleges defamation of character under Pennsylvania law. Finally, Woodson's complaint dimly suggests a violation of the ADA and RA for his removal from the C.Q. position due to his prior drug use.[4] I will now address those claims *seriatim*.

### A. § 1983 Claims

"Under Section 1983, a plaintiff must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under color of state law." *Phillips*, 515 F.3d at 235 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996)). Here, Woodson alleges a deprivation of his constitutional rights under the Eighth and Fourteenth Amendments. There is no dispute that the defendants are state actors. As a preliminary matter, however, I must discuss the capacity in which each defendant is sued, as that issue is squarely at the forefront of this motion to dismiss.

§ 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . , subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

42 U.S.C. § 1983 (2006). "In the Third Circuit, it is well-settled that a prison or correctional facility is not a 'person' under federal civil rights laws." *Regan v. Upper Darby Twp.*, CIV A 06-1686, 2009 WL 650385, at *4 (E.D. Pa. Mar. 11, 2009), *aff'd*, 363 F. App'x 917 (3d Cir. 2010).

---

[4] Woodson also pleads "medical negligence." This claim is targeted at defendants not party to this motion; therefore, the claim of medical negligence is not addressed.

For this reason, Woodson's § 1983 claims against LCP are dismissed with prejudice. *See Gonzalez v. Lancaster Cnty. Prison*, Civ. A. No. 95-0355, 1995 WL 46697, at *1 (E.D. Pa. Feb. 1, 1995) ("Since Lancaster County Prison is not a person, it may not be sued under § 1983."); *see also Mitchell v. Chester Cnty. Farms Prison*, 426 F. Supp. 271 (E.D. Pa. 1976) (holding county prison "not a 'person' subject to suit under federal civil rights law").

Apart from LCP, Woodson also alleges § 1983 violations against Smeal, Arnold, and Shiffer. Individual state actors may be sued in either an official or personal capacity. "[T]he distinction between personal and official capacity suits is more than 'a mere pleading device.'" *Garden State Elec. Inspection Serv. Inc. v. Levin*, 144 F. App'x 247, 251 (3d Cir. 2005) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). When a plaintiff sues a state actor in his official capacity, he is essentially "pleading an action against [the] entity of which [the] officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). To sue a state actor in his official capacity, the alleged unconstitutional action must "implement[] or execute[] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690 (1978). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "[O]fficers sued in their personal capacity come to court as individuals"; thus, their personal assets are at stake. *Id.* at 27.

"To determine whether a plaintiff sued a defendant in his personal capacity, official capacity, or both, [a court] look[s] to the complaint and the course of the proceedings." *Atwell v. Schweiker*, 274 F. App'x 116, 118 (3d Cir. 2007). A factor that weighs toward a finding of official capacity is the implication of a policy or custom that leads to a violation of federal law.

7

*See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  On the other hand, personal capacity is generally found when a plaintiff seeks punitive damages or a defendant claims some type of immunity from suit.  *See Atwell*, 274 F. App'x at 118.

Here, after carefully reviewing Woodson's complaint and his response to the motion to dismiss, it appears that he is suing Smeal, Arnold, and Shiffer in both their official and personal capacities.  Woodson seeks $220,000 from LCP and the prison officials, in part for the cruelty and injustices he alleges to have experienced, which amounts to punitive damages.  In their motion to dismiss, the defendants claim they are entitled to qualified immunity.  These two factors point toward personal capacity.  Woodson also claims that a Prime Care policy—a policy adhered to by the prison—led to his removal from the C.Q. position.  This allegation points toward a finding of official capacity.  Accordingly, I will address Woodson's § 1983 claims under both capacities.

> 1. **Fourteenth Amendment Claims**

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property**,** without due process of law."  U.S. Const. amend. XIV, § 1.  Therefore, "[t]o state a cognizable claim under the Due Process Clause, plaintiff must have either a liberty or property interest in his . . . job assignment."  *Katamanto v. King*, 651 F. Supp. 2d 313, 330 (E.D. Pa. 2009) (citing *James v. Quinlan*, 866 F.2d 627, 629 (3d Cir. 1989)).  The Third Circuit has stated that it "do[es] not believe that an inmate's expectation of keeping a particular prison job amounts either to a 'property' or 'liberty' interest entitled to protection under the due process clause."  *Bryan v. Werner*, 516 F.2d 233, 240 (3d Cir. 1975).  It follows, then, that because Woodson does not have either a liberty or a property interest in his C.Q. job,

he cannot state a claim for relief under the Due Process Clause. Accordingly, his due process claim is dismissed with prejudice as amendment would be futile.

Woodson also seems to allege a claim under the Fourteenth Amendment's Equal Protection Clause. "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sunday Lake Iron Co. v. Wakefield Twp.*, 247 U.S. 350, 352 (1918). A violation of the Equal Protection Clause may exist when government action "discriminates against a 'suspect class,' or if it interferes with a 'fundamental right.'" *Brown v. Borough of Mahaffey*, 35 F.3d 846, 850 (3d Cir. 1994) (quoting *Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 457-58 (1988)). In addition to a violation of the Equal Protection Clause through the disparate treatment of a suspect class, the Third Circuit has also recognized claims under a "class of one" theory. *See Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006). "[T]o state a claim under that theory, a plaintiff must allege that (1) the defendant treated him differently than others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Id*. at 239. Construing Woodson's complaint liberally, it appears that he alleges Equal Protection Clause violations, both as a member of a suspect class and as a "class of one."

In his complaint, Woodson alleges that he was the only inmate fired under Prime Care's policy, which he states is "discrimination in its purest form. It may even be racial?" (Compl. 7.) I construe this claim generously as a claim of disparate treatment against a suspect class. To the extent that Woodson attempts to state a violation of the Equal Protection Clause due to the

9

policy's discrimination against a suspect class, his claim fails. Woodson does not claim membership in any class, something needed to give him standing to sue. Instead, he merely suggests that the policy *may* be based on racial discrimination. Moreover, not only does Woodson fail to claim membership to a specific racial class, he also fails to state the race against which Prime Care's policy discriminates. These insufficient factual allegations are not enough upon which to base a claim for relief. Therefore, Woodson's Equal Protection Clause claim is dismissed against the defendants in their official and personal capacities because he has not provided the slightest bit of factual information to support a facially plausible claim that the policy, or the prison officials, discriminate against a suspect class. "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Because more specified pleading, if made in good faith, could possibly cure the claim's deficiency, the Equal Protection claim as to a suspect class is dismissed without prejudice to Woodson's right to amend his complaint.

Woodson's "class of one" claim under the Equal Protection Clause also fails, for Woodson has not alleged that "similarly situated [individuals were] nevertheless treated differently" under the policy. *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 602 (2008). Woodson claims that there are "numerous inmates working in the kitchen and as C.Q.s all over this prison who are I.V. drug users or may have [various diseases] who . . . still remain employed by L.C.P." (Compl. 7.) While I must accept that allegation as true for purposes of this motion, Woodson strongly disavows being "similarly situated" to those inmates. In fact, he states that he

does "not have or contracted [sic] any diseases," which his medical records can verify. (*Id*.) Furthermore, he states that he is not an I.V. drug user. (*See id*.) From these statements, it appears that Woodson is in the exact opposite position as those other inmates. *See Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) ("Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'") (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Therefore, he cannot make out the first element of a claim under the "class of one" theory.

Even if Woodson could get past the first element, his "class of one" claim would still fail because it appears solely aimed at the Prime Care medical staff, the people Woodson claims are enforcing the Prime Care policy that resulted in his removal from C.Q. While Woodson may have filed grievances with Smeal, Arnold, and Shiffer concerning his removal, he fails to state how any of these prison officials intentionally treated him differently than similarly situated individuals—an allegation needed to fulfill the second element of the claim—especially since neither Smeal, nor Arnold, nor Shiffer had any direct personal involvement in Woodson's removal.[5] In fact, from the allegations in Woodson's complaint, along with his attached grievance (Pl.'s Ex. A), it appears that of the prison officials only Deputy Warden Arnold had even the slightest and most remote involvement in the matter, via his brief response to Woodson's grievance. In upholding Woodson's removal from C.Q., Arnold explained in his response that "medical ha[d] determined that [Woodson was] not eligible to work in Food Service." Thus, Arnold's denial of Woodson's request to be reinstated as C.Q. was based

---

[5]This motion to dismiss is on behalf of these defendants only, not the Prime Care defendants.

entirely on Prime Care's professional judgment and enforcement of its own policy, and was not based on any possible intentional discrimination by Arnold.

For those reasons, Woodson's Equal Protection Clause claim is dismissed with prejudice against the prison officials in both capacities, as any amendment by Woodson would be inequitable and futile based on the factual allegations he has already made.

### 2. Eighth Amendment Claim

In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." 429 U.S. 97, 104 (1976) (citations omitted) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173 (1976)). Thus, "deliberate indifference to a prisoner's serious illness or injury states a cause of action under [§] 1983." *Id*. at 105.

The Third Circuit has stated that deliberate indifference requires "'obduracy and wantonness,' which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citations omitted) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Deliberate indifference has been found in cases "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Id*. The Third Circuit has concluded, however, that "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official [] will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

12

Woodson claims that Smeal, Arnold, and Shiffer violated his constitutional rights under the Eighth Amendment by not investigating Prime Care's denial of medication for Woodson's mental disorders, or by not "eliminating the problem." (Compl. 9.) Mental disorders such as bipolar disorder, post-traumatic stress disorder, paranoia, depression, and anxiety may very well be serious medical conditions requiring medicinal treatment. That is a question of fact left to be determined in later proceedings. The question of whether these prison officials were deliberately indifferent to these needs, however, can be answered now: they were not. Upon incarceration, Woodson came under the care of Prime Care physicians. He even states that he received a physical examination the week he was incarcerated. (Compl. 6-7.) As stated in *Spruill*, when a prisoner is under the care of medical personnel, a non-medical prison official will not be found to possess the scienter requirement for deliberate indifference, barring actual knowledge of mistreatment or non-treatment, which is not alleged here. Failure to investigate Woodson's complaints of a denial of medicine is not enough to find the prison officials deliberately indifferent. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) ("Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.") Accordingly, Woodson's Eighth Amendment claim against Smeal, Arnold, and Shiffer is dismissed with prejudice in their personal capacities, as any amendment would be futile because the scienter requirement is lacking. And because he does not impute a prison policy, it is dismissed with prejudice against these officials in their official capacity.

### 3. Mental and Emotional Anguish[6]

As a result of the alleged constitutional violations, Woodson claims that he experienced mental and emotional anguish, and pain and suffering. Because I have found that Woodson's complaint does not state a cause of action under § 1983, I need not address damages. However, in the interest of thoroughness I point out that with respect to his claims of mental anguish and pain and suffering, the Prison Litigation Reform Act states, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Third Circuit has held that "[s]ection 1997e(e)'s requirement that a prisoner demonstrate physical injury before he can recover for mental or emotional injury applies only to claims for compensatory damages." *Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003). The Third Circuit has also held that allegations of emotional injury require a "less-than-significant-but-more-than-*de minimis* physical injury." *Id*. at 536. Based on these holdings, Woodson's claim for compensatory damages with respect to his alleged emotional injuries fails for he has not alleged any physical injury. Furthermore, because I have determined that his

---

[6]The defendants read the complaint as alleging a claim of intentional or negligent infliction of emotional distress under Pennsylvania law. I disagree. In his complaint, Woodson states that he is suffering from mental and emotion anguish, along with pain and suffering, because he is being denied medication, which he believes is a violation of the Eighth Amendment. (Compl. 9.) This is stating an injury *because of* the constitutional violations, not *in addition to* the constitutional violations. Regardless, even if his complaint were construed to allege a claim of intentional or negligent infliction of emotional distress, Woodson has not stated any "extreme, outrageous, and intentional conduct" needed to sustain a claim for intentional infliction of emotional distress, *see Taylor v. Albert Eienstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000), or any of the elements necessary for a negligent infliction of emotional distress claim. *See Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 198-99 (Pa. Super. Ct. 2008) (requiring showing that foreseeable plaintiff incurred emotional distress from defendant's negligence that resulted in physical injury or illness).

complaint fails to state a claim for a violation of a constitutional right, his claim fails to the extent that he seeks nominal or punitive damages.

B.  **Defamation of Character**

The Third Circuit recently addressed a defamation of character claim by a prisoner in *Kohler v. Pennsylvania*, and while the opinion itself is not precedential, I find it persuasive. 438 F. App'x 120 (3d Cir. 2011). In *Kohler*, the Third Circuit stated that "'defamation of character' is 'actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution.'" *Id.* at 123 (quoting *Clark v. Falls*, 890 F.2d 611, 619 (3d Cir. 1989) (citing *Paul v. Davis*, 424 U.S. 693, 701-12 (1976)). Woodson's complaint does not state a claim of a violated constitutional right in connection with his defamation claim. That leaves Pennsylvania state law as the only avenue by which defamation of Woodson's character could occur, and again he fails to state a cognizable claim for relief. *See Sturm v. Clark*, 835 F.2d 1009, 1012 (3d Cir. 1987) ("Absent the alteration or extinguishment of a more tangible interest, injury to reputation is actionable only under state defamation law.").

In *In re Philadelphia Newspapers, LLC* the Third Circuit stated:

> To state a cause of action for defamation under Pennsylvania law, a plaintiff must establish: "(1) the defamatory character of the communication; (2) its publication by the defendant; (3) a reference to the plaintiff; (4) a recipient's understanding of the communication's defamatory character and its application to plaintiff; (5) special harm resulting from the publication; and (6) abuse of any conditional privilege."

690 F.3d 161, 174-74 (3d Cir. 2012) (quoting *Iafrate v. Hadesty*, 621 A.2d 1005, 1006-07 (Pa. Super. Ct. 1993)). In addition, a private-figure plaintiff need only allege that the defamatory

remark was made with negligence, as opposed to a showing of actual malice. *See Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa.*, 923 A.2d 389, 400 (Pa. 2007). In this case, Woodson fails to state any of the elements for a defamation cause of action, let alone provide any facts to support his allegation that he was defamed. His claim is merely a legal conclusion, and therefore does not survive defendants' motion to dismiss. There is nothing in his complaint to support even a hint of defamation of character; therefore, the defamation claim is dismissed with prejudice against LCP, Smeal, Arnold, and Shiffer.

### C. ADA/RA Claim[7]

The Supreme Court has held that Title II of the ADA, which prevents public entities from denying benefits to qualified individuals with a disability because of the disability, applies to state prisons. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1996). "To establish a violation of Title II of the ADA, and inmate must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Brown v. Deparlos*, No. 12-1217, 2012 WL 2512014, at *3 (3d Cir. July 2, 2012) (citing 42 U.S.C. § 12132). The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities." § 12102(1)A. In addition to having a qualifying disability, a person is considered disabled if there is a "record of such an impairment," or if he is "regarded as having such an impairment." § 12102(1)B-C. A "'qualified

---

[7]"In light of the similarities between . . . the ADA and RA and their implementing regulations, we construe and apply them in a consistent manner." *Disabled Action of Pa. v. Se. Pa. Trans. Auth.*, 635 F.3d 87, 91 n.5 (3d Cir. 2011) (quoting *Pa. Prot. And Advocacy, Inc. v. Pa. Dep't of Pub. Welfare*, 402 F.3d 374, 379 n.3 (3d Cir. 2005)). Therefore, I will do the same.

16

individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2). "Recovering heroin addicts are presumptively 'qualified' persons under the ADA . . . ." *New Directions Treatment Serv. v. City of Reading*, 490 F.3d 293, 308 (3d Cir. 2007).

Woodson does not specifically allege a violation of the ADA. Instead, he states in his complaint that when he asked a prison medical official why he was being removed from his C.Q. position, the response was that the policy "pertains to the use of the drug heroin." (Compl. 5.) Later in his complaint, he states that he is neither an I.V. drug user, nor does he have any communicable diseases. These allegations fail to state a cause of action under the ADA because Woodson does not provide enough facts to support a claim of a disability, or that he was excluded from work by prison officials because of a genuine or perceived disability. To find a claim amongst these vague allegations would be to stretch a liberal construction of the complaint to its breaking point. However, I flag this claim because further developed factual allegations could possibly support an ADA claim under the theory that Woodson was removed from his C.Q. position for his past drug use. Of course, the linchpin is that the facts must exist to support such a claim. Because Woodson's complaint dimly suggests a cause of action under this theory, I will dismiss this claim against LCP, Smeal, Arnold, and Shiffer without prejudice to Woodson's right to amend his complaint and provide those facts, should they exist.

IV.   CONCLUSION

For the forgoing reasons, the defendants' motion to dismiss is granted. An appropriate

order follows.